JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

nited States of America ex rel Sarah Taylor

**DEFENDANTS**

COMHAR, Inc.

**(b)** County of Residence of First Listed Plaintiff   Pennsylvania
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Pennsylvania
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gavin P. Lentz, Esquire, Peter R. Bryant, Esquire, Bochetto & Lentz, P.C., 1524 Locust Street, Philadelphia, PA 19102, (215) 735-3900

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &   Pharmaceutical Slander   Personal Injury | | ☐ 820 Copyrights   ☐ 830 Patent | ☐ 450 Commerce   ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal ☐ 340 Marine   Injury Product ☐ 345 Marine Product   Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations   ☐ 480 Consumer Credit   ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff)   ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical Leave Act | | ☐ 895 Freedom of Information Act |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | 26 USC 7609 | State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | | |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. Section 3729, et seq.
Brief description of cause:
fraudulent billing of Medicare and Medicaid

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   3/16/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __exact address not being provided to protect privacy interests.__

Address of Defendant: __100 W. Lehigh Avenue, Philadelphia, PA 19133__

Place of Accident, Incident or Transaction: __Eastern District of Pennsylvania__
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☑

Does this case involve multidistrict litigation possibilities?    Yes☐  No☑

RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
   (Please specify) __False Claims Act 31 U.S.C. Section 3729__

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
(Check appropriate Category)

I, __Peter R. Bryant, Esquire__, counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: __3/16/2016__ _____    __312328__
                     Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: __3/16/2016__ _____    __312328__
                     Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: ___exact address not being provided to protect privacy interests.___

Address of Defendant: ___100 W. Lehigh Avenue, Philadelphia, PA 19133___

Place of Accident, Incident or Transaction: ___Eastern District of Pennsylvania___
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☑

Does this case involve multidistrict litigation possibilities?  Yes☐  No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
(Please specify) __False Claims Act 31 U.S.C. Section 3729__

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
(Check appropriate Category)

I, ___Peter R. Bryant, Esquire___, counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: ___3/16/2016___ _____ ___312328___
Attorney-at-Law           Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___3/16/2016___ _____ ___312328___
Attorney-at-Law           Attorney I.D.#

CIV. 609 (5/2012)

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| United States of America ex rel Sarah Taylor | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. |
| COMHAR, Inc. | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          (✓)

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| 3/16/2016 | Peter R. Bryant, Esq. | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| (215) 735-3900 | (215) 735-2455 | pbryant@bochettoandlentz.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA
*ex rel* SARAH TAYLOR

        *Plaintiffs*

    v.

COMHAR, INC.

        *Defendant*

:
:
:
:
:
:
:
:
:
:
:
:
:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff/Relator Sarah Taylor brings this *Qui Tam* action to recover treble damages and penalties pursuant to the Federal False Claims Act, as amended, 31 U.S.C. § 3729 *et seq.* ("FCA") and alleges as follows:

## INTRODUCTION

1.      This is a *Qui Tam* action brought by plaintiff, Sarah Taylor ("Ms. Taylor") for herself and on behalf of the United States to recover damages and penalties arising from Defendants' knowing submission of thousands of false claims to the Medicare and Medicaid programs for services they purported to provide to the severely disabled residents at COMHAR, Inc.'s residential treatment facilities.

2.      COMHAR, Inc. represents itself as "Quality Care by Caring Professionals."

3.      COMHAR, Inc. continually represents itself as a creating "an environment of trust and support . . . [partnering] with people of all ages with mental illness, addiction, HIV/Aids and/or intellectual disabilities and support them in their journey *toward healthier, more independent, more fulfilling lives*."  (emphasis in original) (*see* a true and correct copy of the COMHAR Website attached

hereto as Exhibit "A.")

4.     In fact, as described herein, Defendant's facilities provided *substandard* care and submitted claims for services that were not provided, were provided in such a manner as to be substandard and worthless, and otherwise violated numerous federal, state and local laws and regulations.

5.     As a result of the substandard and worthless services, residents at COMHAR's facilities were subjected to serious physical harm as a result abuse, neglect and the over-application of medication in order to dull their senses and keep them tired and docile.

6.     In spite of providing such worthless and substantially diminished services, Defendant continued to submit thousands of false claims for payment to the federal and state-funded Medicare and Medicaid programs.

7.     In addition to submitting false claims for payment, Defendant went to great lengths to conceal the substandard care.

8.     Defendant undermined potential whistleblowers by providing them with numbers for a "Reporting Line" to call that purported to be an outside, third-party that governed and oversaw compliance with state regulations and that guaranteed that no retaliation occured against a reporting employee.  That Reporting Line neither guaranteed compliance, nor guaranteed freedom from retaliation, as Ms. Taylor reported to that line several times regarding the worthless and substandard services provided at both facilities that she worked in (the York Street and Allegheny Ave Facilities) and was retaliated against and terminated *twice* for such reporting.

9.     In addition, COMHAR repeatedly assured Ms. Taylor, during her previous employment there that they were investigating the issues set forth below in the York Street

facility and that representatives from the Commonwealth of Pennsylvania would contact her. Upon information and belief, no such governmental agencies were ever contacted by COMHAR regarding the abuse in the York Street facility.

10.     Instead, COMHAR had employees present themselves as "investigators" and took complaints regarding the substandard care. Such investigators clearly implied a connection to governmental agencies and never informed Ms. Taylor that they were in fact COMHAR employees.

11.     COMHAR employed such "investigators" to conceal Defendant's scheme of providing abusive, neglectful and substantially worthless care to its residents in order to collect Medicare and Medicaid reimbursements and payments.

12.     As set forth more fully herein, Defendant further instructed its employees to turn a blind eye to employees' mistreatment and neglect of the residents and to avoid making incident reports at every turn.

13.     Defendant further instructed employees to falsify medical records.

14.     Defendant further had inappropriate staffing levels and staffing participation in resident care. As set forth more fully below, on multiple occasions key personnel would be hours late to the facility and would sleep during their shifts. As a result of such inappropriate staffing levels and participation, employees of COMHAR *would give residents medications early, combine medications that were required to be given at different times and leave nursing techs entirely unsupervised in violation of state law.* Each of these actions significantly increased the chance of harm to the residents.

15.     Further, where COMHAR employees did report the neglect and abuse endured by the residents, Defendant fired employees in an effort to silence those employees. Defendant

retaliated against Ms. Taylor on *multiple occasions* for reporting the mistreatment of residents that Defendant willfully ignored for months.  Such retaliation included, but was not limited to the termination of Ms. Taylor when she was formally employed by COMHAR, as well as the reduction of her hours to *zero* when she was assigned to COMHAR as temporary staff through OMNI staffing.

16.    Defendant, at all times, knew or should have known such services were worthless or of such diminished value, that the United States would not have paid the claims, but for Defendants' misrepresentation and fraud.

17.    In connection with the filing of this Complaint, Ms. Taylor will furnish the United States with the Disclosure Statement required by 31 U.S.C. § 3730(b)(2) consisting of substantially all of the material evidence and information in her possession relating to her claims.

18.    Ms. Taylor is the original source of the facts and information contained in this Complaint and is voluntarily providing that information to the Federal Government at the time of filing this action.

## JURISDICTION AND VENUE

19.    This is a civil action arising under the laws of the United States, specifically, the "False Claims Act" or "FCA."  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.

20.    Venue is proper in this district pursuant to 31 U.S.C. § 3732 and 28 U.S.C. § 1391 because Defendant committed acts prohibited by 31 U.S.C. § 3729(a) in this district, including their submission of false claims for payment as described herein to the various Government agencies and contractors.

21.    Further, Defendant COMHAR maintains a business office and other facilities in

this district and all of the COMHAR residential facilities are located in this district and are actively advertised the services at issue in this Complaint in this district.

## THE PARTIES

22.   Ms. Taylor is a citizen of the United States and resident of the State of New Jersey. Plaintiff is a Licensed Professional Nurse ("LPN"). She was employed by COMHAR and assigned to COMHAR as temporary staff on multiple occasions and was retaliated against on each of those occasions for reporting illegal actions by COMHAR and abuse and neglect of the COMHAR residents .

23.   In or about 2013, Ms. Taylor was employed on a contract basis as an LPN at COMHAR's residential treatment facility at York and Aramingo Avenue ("York Street Facility").

24.   In or about May 12, 2015, Ms. Taylor was again employed as an LPN at Comhar's residential treatment facility at Allegheny Avenue Intermediate Care Facility for the Mentally Retarded ("Allegheny Ave Facility.")

25.   During the course of her employment, Ms. Taylor repeatedly complained to management of COMHAR about inadequate staffing levels, inadequate patient care, missing drugs and the abuse of patients, as well as the impact of all those issues on patient care. (*See* Emails to Supervisor attached hereto as Exhibit "B.")

26.   Ms. Taylor final complaint came after learning that her complaints regarding at least one of her co-workers, Cyanni Leach, ("Ms. Leach") were not being addressed. Ms. Leach was engaged in activities that were detrimental to patient care. After Ms. Taylor made this complaint, she was essentially terminated by having her hours reduced to zero.

27.   Defendant COMHAR, Inc. is a non-profit corporation formed under the laws of

the Commonwealth of Pennsylvania.  Defendant COMHAR may be served at 100 W. Lehigh

Avenue, Philadelphia, PA 19133.

## FACTUAL BACKGROUND

### THE MEDICARE AND MEDICAID PROGRAMS

28.     Medicare is a federally-funded health insurance program for persons 65 years and

older and for certain disabled persons.  42 U.S.C.A. §1395 (Title XVIII of the Social Security

Act).  The Center for Medicare and Medicaid Services (CMS) is responsible for administration

of the Medicare program. Currently, Medicare provides insurance coverage to approximately 40

million Americans.

29.     The Medical Assistance program ("Medicaid") is a joint federal-state program

funded under Title XIX of the Social Security Act. The Medicaid program is designed to pay for

health care services for the poor.  Under Medicaid, the state directly pays health care providers

for services rendered to Medicaid recipients and then obtains the federal share of the payment

from accounts drawn on funds of the U.S. Treasury.  In the State of Pennsylvania, the

Department of Public Welfare (now named the Department of Human Service ("DHS"))

administers the Medicaid program. DHS oversees and monitors compliance with the various

laws and regulations designed to protect the health and safety of Pennsylvania patients.  CMS

oversees the Medicaid program at the federal level.

30.     Medicare and Medicaid programs pay for residential treatment facilities, nursing

home care and intermediate care facilities for their beneficiaries. Facilities that wish to provide

services to these beneficiaries must meet and maintain the minimum staffing, quality of life and

other requirements set forth in the Social Security Act as well as all applicable federal and state

statutes, regulations, requirements and standards.  Failure to maintain state and federal

6

requirements and standards can result in the denial of payments by the Medicare and Medicaid programs.

31.     As set forth more fully below, Defendant has submitted false claims for at least the past three (3) years.

## DEFENDANT FAILS TO PROVIDE THE VERY BASIC NECESSITIES FOR RESIDENT QUALITY OF LIFE AND CARE, YET CONTINUE TO SUBMIT BILLS TO MEDICARE AND MEDICAID FOR PAYMENT

32.     Defendant submitted false claims for payment by Medicare and Medicaid when they sought payment for 1) services that were not provided; and 2) for care and services that Defendants provided to residents of the York Street and the Allegheny Avenue facilities that were so deficient, inadequate, and substandard as to constitute worthless services.  Defendants failed to provide the very basic necessities required for each resident, such that each resident went essentially untreated, which caused substantial deterioration in many resident's conditions as set forth more fully below.  Defendant further allowed its employees to abuse such residents and ignored all complaints regarding such abuse.

33.     Further, in an effort to conceal the abuse and neglect that was rife within Defendant's facilities, it established a fraudulent "Reporting Line" which purported to connect to a third-party to provide oversight on COMHAR's compliance with state and federal law and regulations.   Employees were encouraged to utilize the Reporting Line with the understanding that no retaliation would occur.

34.     However, retaliation did occur because employees who used the Reporting Line, like Ms. Taylor, were then penalized and terminated for utilizing the Reporting Line.

35.     Further, Defendant failed to provide the minimal staff for services that it purported to offer.

36.     The Allegheny Ave Facility is an Intermediate Care Facility for The Mentally Retarded ("ICF").

37.     Federal law requires ICFs to comply with minimum standards in order to remain eligible for payment under the Medicaid program.

38.     Such minimum standards are set forth in 42 CFR 483.400—483.480

39.     In addition, Pennsylvania state law expressly incorporates "42 CFR 483.400—483.480 as the licensing regulations for [ICFs]." 55 Pa. Code § 6600.3.

40.     42 CFR 483.420 sets forth specific conditions of participation related to client protection in ICF's, including:

> i.   Ensur[ing] that clients are not subjected to physical, verbal, sexual or psychological abuse or punishment;
>
> ii.  Ensur[ing] that clients are free from unnecessary drugs and physical restraints and are provided active treatment to reduce dependency on drugs and physical restraints;
>
> iii. Provid[ing] each client with the opportunity for personal privacy and ensur[ing] privacy during treatment care of personal needs;

41.     Further, ICF's like the Allegheny Facility are bound under the conditions of participation in Medicare and Medicaid to "ensure that all allegation of mistreatment, neglect or abuse, as well as injuries of unknown source, are reported immediately to the administrator or to other officials in accordance with State law through established procedures."

42.     Pennsylvania state law clearly requires that an ICF's:

> [E]mployee or an administrator who has reasonable cause to suspect that a recipient is a victim of abuse or neglect *shall* immediately make an oral report to an agency. If applicable, the agency *shall* advise the employee or administrator of additional reporting

requirements that may pertain under subsection (b). An employee shall notify the administrator immediately following the report to the agency.

Within 48 hours of making the oral report, the employee or administrator **shall** make a written report to the agency. The agency shall notify the administrator that a report of abuse has been made with the agency.

35 Pa. Stat. Ann. § 10210.501 (West)

43.     Further, pursuant to 42 CFR 483.460(k) ICFs like the Allegheny Ave Facility must "have an organized system for drug administration that identifies each drug up to the point of administration. The system must assure that . . . [a]ll drugs, including those that are self-administered, are administered **without error.**"

44.     Accordingly, in order to continue to participate and receive payments from Medicare and Medicaid, COMHAR's facilities must be compliant with Pennsylvania State Law, as well as the regulations set forth in 42 CFR 483.400—483.480.

45.     The Allegheny Ave Facility utterly failed to comply with these responsibilities, including failing to properly administer drugs and failing to report neglect and abuse despite its obligations.

46.     In May 2015, while Ms. Taylor was employed at the Allegheny Ave Facility, she discovered that Defendant operated the facility in a manner that routinely went without the necessary staff which impacted its ability to appropriately administer drugs.

47.     For example, on August 14 and 15, 2015 the Allegheny Ave Facility had only one nurse on duty.  That nurse did not know where any of the residents' medications were, or what medications were to be given out.  As a result of the lack of necessary staff, **residents did not receive their required medications for an entire weekend.**

48.     Further, as many of the residents at COMHAR's Allegheny facility have significant intellectual disabilities, some of the residents require a staff member that is dedicated

"one-on-one" to them for the entirety of the day.

49.     Respondent found that the staff at COMHAR's Allegheny facility routinely failed to comply with their one-on-one duties which led to instances of neglect, injury and abuse.

50.     In particular, Ciyanna Leach was routinely assigned one-on-one duties and failed to stay one-on-one with her resident.

51.     Ciyanna Leach was regularly seen sleeping when she was supposed to be one-on-one with residents.

52.     This behavior was reported on numerous times to Vice-President Michelle Feeny as well as Rahemena Wilson who refused to confront Ms. Leach on her behavior and instead actively protected her in violation of State and Federal Law.

53.     This protection extended to an incident that occurred on August 17, 2015 where two residents were injured as a result of Ms. Leach's failure to comply with her duties, as well as Defendant's  acqueisance in that failure and Defendant's failure to put in place proper reporting procedures.  In fact, the reporting procedures were so deficient that staff were ***never trained*** how to report any such issues at the negligible orientation that employees attended prior to working in the Allegheny facility.

54.     On August 17, 2015, two female residents were in a bathroom at the same time. One of the residents required one-on-one care but was not being supervised by her assigned caretaker Ms. Leach and harmed the other resident.

55.     Ms. Leach instead was violating a safety rule, as she was known to do, and as her COMHAR supervisor was well aware.

56.     When the residents were in the bathroom a female residents obtained  a significant bruise on her left breast.

57.    While Ms. Leach wrote up the incident, including the resident bruises and they were in the bathroom together, not only violating safety rule but the residents 1:1 ratio, Ms. Wilson, in her capacity as the Program Director, *ripped the report up,* stating that "Cyanni Leach knows better than to report a patient-to-patient" incident.

58.    Upon information and belief, Ms. Wilson meant that such a reported incident would require a report to state authorities which could put COMHAR's Medicare, Medicaid and state grants in jeopardy.

59.    No report was ever made to any state agency, in direct violation of Federal and State law as set forth in 42 CFR 483.400—483.480 and 35 Pa. Stat. Ann. § 10210.501.

60.    However, these were not the only incidents where Defendant and its Directors covered up serious risks to resident's physical and mental health as a result of their neglect and substandard services:

        i.    On July 17th, Ms. Wilson reported to Ms. Taylor that she was expressly directed by the Vice President Michelle Feeny *not to disclose* a medication error to governmental authorities. The Medication error involved a resident (Resident K) that had already been injured at the Allegheny Facility. This was direct breach of COMHAR and its employees duties to report injuries and medication errors to the State. This direction was made because COMHAR had already been reported by an ER doctor for a severe burn to that Resident K's back in February 2015, and did not want to have to report yet another injury to that same patient.

       ii.    On August 8th, Ms. Leach was found sleeping at the wheel of the para-transit van with the engine running and a resident that required one-on-one car in the back of the van.

     iii.    On August 13th, Resident K's wheelchair was unsecured in the Comhar van and flipped over when the van moved. Resident K

injured her arm, but no medical evaluation was sought and no
report was made to the State or any other officials.

61.     However the existence of such incidents and the cover-up of such incidents were
not limited to the Allegheny Facility.  Prior to her employment at the Allegheny facility, Ms.
Taylor was employed on a contract basis as an LPN at their York Street Facility in 2013.

62.     While working at the York Street facility, Ms. Taylor observed multiple residents
being openly abused.

63.     She saw residents who received bruises and black eyes from the employees.

64.     It was reported to Ms. Taylor that Defendant's employees pour water on severely
intellectually disabled residents.

65.     It was reported to Ms. Taylor that employees were body-slamming residents.

66.     Perhaps most disturbing, Ms. Taylor witnessed nurses over-medicating the
residents with Ativan to keep the residents sleepy, quiet, compliant and drugged during shifts.

67.     Ms. Taylor reported these incidents to the Nurse Manager of York and Allegheny.
When no action was forthcoming, Ms. Taylor reported these incidents directly to Vice-President
Michelle Feeny.

68.     COMHAR HR contacted Ms. Taylor and stated that there was an investigation in
progress and that Ms. Taylor should expect to be contacted by a state investigator.

69.     Instead, Ms. Taylor was contacted by a woman who stated that she had been
"assigned to investigate" the abuse that Ms. Taylor had witnessed at the York Facility.  While the
woman did not specifically state that she was the state investigator, Ms. Taylor assumed that she
was from the conversation she had with COMHAR HR.  At no point did the woman ever inform
Ms. Taylor that she was an employee of COMHAR.

70.     In fact, it was not until 2015 that Ms. Taylor realized that the person who

presented herself as a "state investigator" was in fact a COMHAR employee.  The woman never identified herself as a COMHAR employee.

71.    Her complaints regarding the York Street facility were never addressed by the state.

72.    Upon information and belief Ms. Taylor's complaints regarding the York Street facility were never reported to any governmental officials.

73.    As a result, Defendant knew or should have known that since at least 2013 that residents of its facilities were subjected to unreasonable risks of physical and mental harm by virtue of their neglect and diminished or substandard services.

74.    However, as a result of Defendant's intentional actions to hide such actions and to conceal the fact that the Reporting Line went directly to its own employees, and was not a third-party compliance line, the Pennsylvania Department of Health and other Government agencies and inspectors were unaware of the true state of affairs and condition and health of residents at the COMHAR's facilities.  Such concealment allowed Defendant to avoid the denial of any of the fraudulent and worthless Medicare and Medicaid billings.

75.    Further, as a result of Defendant's failures to provide required services to the residents at the COMHAR facilities, residents suffered from unsanitary, unsafe, abusive and neglectful conditions that led to injury.

76.    Despite this substandard care and worthless services, Defendant continued to bill Medicare and Medicaid for "care" for the residents.

77.    Accordingly, as set forth herein, the services for which Defendant submitted claims for payment to Medicare and Medicaid both a) did not occur; and b) were of such substandard quality that Defendant provision of those services ceased to be compensable by

Medicare and Medicaid.

78.     Defendant have submitted such false claims since at least 2013 until the present.

79.     Upon information and belief, such false claims are still being submitted.

80.     As a result, Defendant is liable for each and every false claim under the False Claims Act.

81.     Furthermore, in addition to submitting claims for payment for services that were not provided, Defendant's fraud is further evidenced by their failure to comply with federal and state statutes and regulations, despite falsely certifying such compliance.

82.     Pursuant to 42 U.S.C. §1395i-3(d)(4) and 42 U.S.C. §1396r-3(d)(4), Defendant obligated to be in compliance with "all applicable Federal, State and local laws and regulations" to participate in Medicare and Medicaid reimbursements.

83.     Under the Medicare and Medicaid programs, providers may submit claims only for services that are "of a quality which meets professionally recognized standards of care."  42 U.S.C. §1320c-5(a)

84.     Federal law requires ICFs to comply with minimum standards in order to remain eligible for payment under the Medicaid program.

85.     Such minimum standards are set forth in 42 CFR 483.400—483.480

86.     In addition, Pennsylvania state law expressly incorporates "42 CFR 483.400—483.480 as the licensing regulations for [ICFs]." 55 Pa. Code § 6600.3.

87.     42 CFR 483.420 sets forth specific conditions of participation related to client protection in ICF's, including:

> i.   Ensur[ing] that clients are not subjected to physical, verbal, sexual or psychological abuse or punishment;

    ii.   Ensur(ing) that clients are free from unnecessary drugs and physical restraints and are provided active treatment to reduce dependency on drugs and physical restraints;

    iii.   Provid[ing] each client with the opportunity for personal privacy and ensur[ing] privacy during treatment care of personal needs;

88.    Further, ICF's like the Allegheny Facility are bound under the conditions of participation in Medicare and Medicaid to "ensure that all allegation of mistreatment, neglect or abuse, as well as injuries of unknown source, are reported immediately to the administrator or to other officials in accordance with State law through established procedures."

89.    Pennsylvania state law clearly requires that an ICF's:

> [E]mployee or an administrator who has reasonable cause to suspect that a recipient is a victim of abuse or neglect shall immediately make an oral report to an agency. If applicable, the agency shall advise the employee or administrator of additional reporting requirements that may pertain under subsection (b). An employee shall notify the administrator immediately following the report to the agency.
>
> Within 48 hours of making the oral report, the employee or administrator shall make a written report to the agency. The agency shall notify the administrator that a report of abuse has been made with the agency.

35 Pa. Stat. Ann. § 10210.501 (West)

90.    Further, pursuant to 42 CFR 483.460(k) ICFs like the Allegheny Ave Facility must "have an organized system for drug administration that identifies each drug up to the point of administration.  The system must assure that . . . [a]ll drugs, including those that are self-administired, are administered *without error.*"

91.    As set forth above, Defendant has failed to comply with such regulations.  The inadequate services provided by the staff ensured that residents would not receive the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial

well-being.  Further the intentional abuse and neglect of residents at the York Street and Allegheny Ave facilities, as well as other facilities, was non-compliant with these federal regulations.

92.     As a result, Defendant is not in compliance with statutes and regulations which were conditions of payments by the Medicare and Medicaid programs, and thus each and every request for payment made by Defendants has been falsely certified.

93.     The result of Defendant's persistent failures to comply with the applicable laws and failure to provide services that are "of a quality which meets professionally recognized standards of care" resulted in Defendant's submission of claims for payment for services that were not provided.

94.     In addition, Defendant's creation of a "compliance" Reporting Line that purported to ensure third-party review of Defendant's compliance with state and federal regulations and to provide protection to whistleblowers from retalaiation, but instcad was manned by and reported to Defendant's own employees, was an effort to conceal such substandard and worthless services and prevent the discovery of such deficiencies.

95.     As a result, *each and every request* for payment made by Defendant has been falsely certified.

96.     Accordingly, Defendant submitted false claims that failed to comply with applicable state and federal regulations and in connection with their provision of substandard and/or worthless care, as detailed above. The claims for payment submitted by Defendant were also false in that they were premised on false records Defendants created to conceal their substandard services and that are relied upon by Medicare and Medicaid as a basis for payment under these programs.

## DEFENDANT'S UNLAWFUL RETALIATION AGAINST RELATOR TAYLOR

97.     Ms. Taylor throughout her employment at COMHAR complained to management about the inadequate care being provided to residents.

98.     Ms. Taylor's complaints and challenge to management came to a head in August 2015 when she protested Defendant's inadequate response to yet further neglect of patients and protection of Ms. Leach.

99.     As a direct result and in retaliation for her repeated complaints Ms. Taylor was terminated by COMHAR.

## COUNT I
## FALSE CLAIMS ACT

100.    Ms. Taylor repeats and incorporate each allegation contained above as if fully set forth herein.

101.    Ms. Taylor brings this Qui Tam action on behalf of herself and the United States Government to recover damages and civil penalties under 31 U.S.C.. § 3729(a) of the False Claims Act.

102.    31 U.S.C. § 3729(a) provides, in relevant part, liability for any person who-

        (a)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

        (b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

        (c)     Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

103.    By virtue of the acts described herein, Defendant violated 31 U.S.C. §3729(a)(1) and (2) from at least 2013 through the August 2015 and continuing through the present, and

knowingly presented or caused to be presented thousands of false or fraudulent claims to CMS and DPW/DHS for Medicare and Medicaid reimbursement.

104.    CMS and DPW/DHS, unaware of the Defendant's violations of §3729(a)(1) and (2) as described herein, paid or contributed to the payment of, the claims submitted by Defendants.

105.    As a result of Defendant's violations of 31 U.S.C.A. § 3729(a)(1) and (2), the United States Government has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

106.    Ms. Taylor is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 31 U.S.C.A § 3730(b) on behalf of herself and the United States.

**WHEREFORE,** Relator Taylor respectfully request this Court award the following damages to the following parties and against Defendants:

To the UNITED STATES:

(a)    Three times the amount of actual damages which the United States Government sustained as a result of Defendant's submission of false claims;

(b)    A civil penalty of not less than $6,000 and not more than $12,000 for each false claim Defendant presented or caused to be presented to the United States for payment;

(c)    Prejudgment interest:

(d)    All costs incurred in bringing this action.

***To RELATOR  Taylor:***

(a)    The maximum amount allowed pursuant to 31 U.§.C.A. § 3730(d) and/or any other applicable provision of law;

(b)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(c)    An award of reasonable attorneys' fees and costs; and

(d)    Such further relief as this Court deems equitable and just.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF SECTION 3730(h) OF THE FALSE CLAIMS ACT

107.    Ms. Taylor repeats and incorporates each allegation contained in paragraphs above as if fully set forth herein.

108.    31 U.S.C. § 3730(h) provides as follows: Any employee, who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this Section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this Section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the seniority status  such employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

109.    Ms. Taylor's action in repeatedly protesting inadequate staffing, care and abusive practices was protected activity.

110.    Defendant retaliated against Ms. Taylor by terminating her as set forth more fully herein.  Such retaliation was meant conceal Defendant's egregious and fraudulent actions, as well as silence Ms. Taylor.

111.    Defendant's fraudulent acts as described herein constitute violations of 31 U.S.C. § 3729 *et.* seq. Ms. Taylor's efforts to disclose and correct Defendant's violations of the FCA as described herein, were made in furtherance of protected activities under § 3730(h) of the FCA.

148.    Defendant knew or should have known that Plaintiff was engaging in protected activities when she revealed the defendant's failures in care to management and protested the abusive and egregious treatment endured by the residents.

**WHEREFORE,** Relator Taylor respectfully request this Court grant judgment in her favor and award the following damages against Defendants:

(a)    Awarding Plaintiff front pay and two times her back pay since August 2015, plus interest on her back pay calculated at the prime rate, compounded annually;

(b)    Awarding Plaintiff compensatory damages, including damages for emotional distress;

(c)    Awarding Plaintiff punitive damages in an amount sufficient to deter defendants from committing such wrongful acts in the future;

(d)    Awarding Plaintiff her reasonable attorneys' fees and costs;

(e)    Such further relief as this Court deems equitable and just.

**BOCHETTO & LENTZ, P.C.**

BY:  _____

Gavin P. Lentz, Esquire
Peter R. Bryant, Esquire
Attorney I.D. Nos. 53609, 312328
1524 Locust Street
Philadelphia, Pennsylvania 19102
(215) 735-3900
(215) 735-2455 (fax)
glentz@bochettoandlentz.com
blentz@bochettoandlentz.com
pbryant@bochettoandlentz.com
*Attorneys for Plaintiff / Relator*

Date: March 16, 2016

Exhibit "A"



*About*



*Members show how they feel about COMHAR's HOPE Program*

COMHAR creates an environment of trust and support.  We meet the individual and family where they are. Together, we identify strengths and goals and develop a plan built on their strengths to achieve their hopes and dreams.

We partner with people of all ages with mental illness, addiction, HIV/Aids and/or intellectual disabilities and support then in their journey *toward healthier, more independent, more fulfilling lives*.

> *"COMHAR has been a sanctuary, a home, a place where I can be myself.  Through COMHAR I have grown mentally.  My therapist and my doctor are there.  My counselor and my friends are there. I find love, support, and kindness.  When I don't feel good, it is okay to come to COMHAR.  When I am insecure..., I go to COMHAR.  COMHAR is like a big puppy.  It loves you unconditionally.  It is always there to lick you in the face..."*
>
> *—Cecilio, Community Living Room*

As a diverse human services organization we help create innovative and sustainable communities, meeting their needs today and tomorrow.  Give us a call today, 215-203-3000.

# Exhibit "B"

On Mon, Aug 10, 2015 at 9:38 AM, Sarah Taylor <sarah.taylor3553@gmail.com> wrote:
Hi Michelle,

I am sure you have heard about events from this weekend by now. I like Rahmena but this has to be reported.  I just want you to have the whole story. Short and simple is Cyanni is trying to act as if this is personal it is not. Nurses are suppose to look out for the safety of these residents. I know Rahmena has a relationship with her but when it comes down to safety that's a non factor. This should have been handled before it went to far. Just glad a resident has not been seriously harmed.
1) sporadic reports have come in from employees saying they have walked in during the day and found entire shift including the nurse asleep.
2) sleeping on the job was addressed at a staff meeting and put in communication book.
3)) I had to shake her leg one day to wake her.
4) David (Nurse) has reported her sleeping he states several times this last time he forwarded me pictures that I sent to Rahmena. See attached.
5) Saturday he called stating that he observed her sleep behind the wheel with resident in back of van. It's getting to serious. I heard her arguing with him.
6) Why she wanted to send him home as well I can't figure out. He did his job.
7) The issue with the abusive boyfriend is her personal business but when it's brought to work it's a problem. Staff stated a few weeks av she ran back in the job allegedly being chased by him and police where called.
8) I have been reporting all this so Rahmena could handle it but now it's to the point it has to go up the chain. She just pulled David off the schedule and I told her it's not right. She said we will talk later. She said it's his word against hers. That's not true. I like her but I can not just not say anything. It's not right.
9) I truly don't get the getting mad at the person reporting when these things should not be happening to begin with. Regardless it is what it is at this point. I know Rahmena had brought up possibly offering her EAP. Maybe thats an option. I don't know, I just know after Saturday it can't continue like this.

   Attachments

       Preview attachment IMG_5434.JPG

       [×]

       IMG_5434.JPG

       Preview attachment IMG_5435.JPG

       [×]

       IMG_5435.JPG
       106 KB

       Aug 17
       Preview attachment IMG_5436.JPG

       [×]

       IMG_5436.JPG

       Preview attachment IMG_5437.JPG

       [×]

       IMG_5437.JPG

Preview attachment IMG_5438.JPG



IMG_5438.JPG

**MICHELLE FEENEY**

to me

Thank you for the info.  It is being addressed so I appreciate your follow up.  We do not want staff taking pictures of employees, etc. so please discourage this moving forward.  If you have concerns and can't seem to work them out with Rahmena, I am obviously the next step so thanks for reaching out.

Michelle

**Sarah Taylor <sarah.taylor3553@gmail.com>**

to MICHELLE

Hi,
Yes I will. I didn't know he had taken picture till he informed me.  I don't have an issue personally with Rahmena I actually like her I just think this getting out of hand. I know the man is not just picking on her, so I have to tell it like it is, there  is a problem. I will write in communication book no pictures and it can be brought up at staff meeting no photos. Thanks.

Sarah

On Monday, August 10, 2015, MICHELLE FEENEY <mfeeney@comhar.org> wrote:

Thank you for the info.  It is being addressed so I appreciate your follow up.  We do not want staff taking pictures of employees, etc. so please discourage this moving forward.  If you have concerns and can't seem to work them out with Rahmena, I am obviously the next step so thanks for reaching out.

Michelle

Hi Michelle,

I think you already know what kind of person I am, I do what's right, I advocate for my residents and I certainly advocate for myself.

1. Does the CEO have an open door policy?? I would like to speak to him and if not possible would like his email or fax number. I don't mind if you are there.

2. Monday 8/10/15 Rahmena returned to site after going to HR saying for now on all calls go to her even nursing calls. I have no problem with that. I came on board because I was waiting for the position you offered me. As you know I said I did not want to stay here. I only agreed to stay here when you offered day / manager position if when the other position came available I could still have it and that was depending on if you could switch the job description from RN to LPN. So all these months I have been doing basically all the functions of the

2

nurse manger position without the title and of course without pay increase or benefits. I say all this because I took the pay cut coming on board not just waiting for the other position but to get the experience. I thank you sincerely for that opportunity. However, since I have been here I was told as acting in this position all these things were my responsibility. That changed on Monday. So if I have done something wrong I need to be informed because the only thing that changed between Friday and Monday was I filed a complaint and I supported the nurse who voiced safety issues.

3. Considering all I have just stated I would like to discuss my job reference because they will be coming to you. I have worked hard trying to learn, maintain this office and perform the functions of this job.  That's not gonna be for nothing. I don't appreciate the implying I have done something wrong, incapable of performing the job nor the telling of these nurses that they should not have been contacting me or following my direction but in stead should have been calling her the director. It took her 3 1/2 months to tell them that after they have been calling me day and night for guidance. This occurs right after I file a complaint? I don't like it. Now everyone is acting and saying that no one suppose to be sent home; she said in the staff meeting it was aromatic termination when I said I would write up anyone sleeping. The last staff meeting she read my part to the staff which basically said the same thing. So I can't have people lying on me when I work hard for my good name. I'm not intimidated, I will not support anyone doing wrong, I will report what I need to and I will always look out for these residents while I'm here.


Sarah Taylor <sarah.taylor3553@gmail.com>

to MICHELLE

Hi Michelle,
Was told by Rahmena per yourself and Tonika I'm on suspension Till further notice for giving out information. That a call came in today.  To who? What info?  It's no problem.


Sarah Taylor <sarah.taylor3553@gmail.com>

to MICHELLE

Hi Michelle,

I got Rahmena's voice message saying she and Tonica would like to meet with me at HR today, tomorrow at 3:30 or next week. It is to late today and tomorrow I have a 3pm appointment that was made about 2 months ago.

So, I understand there needs to be a meeting but I'm confused about why I would be meeting with Rahmena when she is not my supervisor and named in my complaint. Also, Tonika is according to her a very good friend so there appears to be a conflict of interest. I am more than willing to meet with HR but with a different set of people.

Please email or mail me the date and time and since I am already suspended the reason for the meeting.

Thank You,

Sarah


**MICHELLE FEENEY**

to me


Hi Sarah,

In looking at schedules, after tomorrow Tonica will not be in the rest of this week and after this Friday, I won't be returning until September 8th.  If you would like to wait until then, I can be a part of the meeting upon my return.  If not,

you still have the option to meet with Tonica and Rahmena while I am out.  Rahmena would be in attendance in her capacity as Program Director.   As for the friendship that you are referring to- while we all develop working relationships with one another, we are expected to work within our roles and follow professional boundaries and is a non-issue.  Please let me know your preference and I will inform HR on what you would like to do.  Thanks!


Michelle