IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH TAYLOR | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 16-1218 |
| | : | |
| COMHAR, INC. | : | |

McHugh, J.                                                                                          January 11, 2022

## MEMORANDUM

This is an action under the False Claims Act.  Relator Sarah Taylor, a licensed nurse, alleges that Defendant Comhar, Inc., which operates treatment facilities for disabled individuals, fraudulently billed Medicare and Medicaid for substandard care.  Taylor also claims that she faced illegal retaliation after reporting Defendant's violations of treatment standards.  In a previous memorandum opinion, I granted Defendant's motion to dismiss and allowed Relator the opportunity to file an amended complaint.  Relator returns with an amended complaint, prompting another motion to dismiss.  The amended complaint makes a feeble attempt to remedy the defects stated in my original opinion, adding only eight paragraphs to the amended complaint, which is otherwise identical to the original complaint.  Because these additions do not cure the deficiencies in Relator's complaint, and as I have already granted leave to amend once, Relator's claims will now be dismissed with prejudice.

### I.     Factual Background

My previous memorandum opinion set forth a full account of the factual background and the amended complaint largely mirrors the original complaint.  I therefore include only a brief recitation of the facts here.  On March 16, 2016, Sarah Taylor ("Taylor" or "Relator") initiated a *qui tam* action, seeking to recover damages and civil penalties for alleged violations of the False

Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). Taylor averred that Defendant Comhar, which operates residential treatment facilities for disabled individuals, submitted thousands of false claims to Medicare and Medicaid and retaliated against Taylor after she reported Defendant's subpar services. *See* Compl. ¶¶ 1, 8, ECF 1. The United States declined to intervene in this matter, and the complaint was unsealed and served upon Defendant. *See* ECF 19, 20. Defendant filed a motion to dismiss, which was granted without prejudice. ECF 33. Relator amended her complaint, but the scope of the revision is narrow. The only new allegations are in Paragraphs 33-35, 52, 54-56, and 68 of the Amended Complaint. ECF 34. They are largely conclusory and mostly relate to Relator's implied certification claim. This motion to dismiss followed. ECF 35.

II. **Standard of Review**

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In cases brought under the FCA, claimants alleging fraud must also meet the higher pleading standard of Federal Rule of Civil Procedure 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In interpreting the "particularity" standard, the Third Circuit has held that "it is sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153, 156–157 (3d Cir. 2014). This requires a relator to allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic*

*Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).[1]

### III. Discussion

A. Retaliation

In my prior opinion, I described the requirements to state a claim for retaliation under Section 3730(h) of the FCA, 31 U.S.C. § 3730(h), and held that Relator's original retaliation claim failed because Relator did not adequately plead that she engaged in protected conduct. None of the minor additions to the amended complaint provide any further details related to Taylor's alleged protected activity. There is nothing pleaded in the amended complaint to show that she personally investigated Defendant's billing practices or complained about the submission of fraudulent claims to the government. I therefore stand by my previous conclusion that Ms. Taylor's conduct was directed to ameliorating noncompliance rather than fraud. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001). Because her investigatory activity was not directed at uncovering fraud and lacked a nexus to the FCA, I will grant Defendant's motion to dismiss Relator's retaliation claim. *U.S. ex rel Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

B. FCA Claims

My previous opinion also outlined more fully the contours for a claim under the False Claims Act. "There are two categories of false claims under the FCA: a factually false claim and a legally false claim." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011), *abrogated on other grounds*. In her amended complaint, Ms. Taylor attempts to bring the

---

[1] Despite my prior admonition that Rule 9(b) applies, Relator's brief ignores its heightened pleading standard, and discusses only the general rules of pleading set forth in Rule 8. Relator's Resp. to Def.'s Mot. Dismiss at 12-13, ECF 38.

same claims as in her initial complaint: (1) a factually false claim that Defendant provided worthless services, and (2) a claim of implied false certifications of compliance with federal and state regulations.[2]  For the reasons articulated below, Taylor's claims will be dismissed.

1. <u>Factually False Worthless Services Claim</u>

Ms. Taylor's initial worthless services claims failed because her allegations did not meet the demanding worthless services liability requirement that "the performance of the service [must be] so deficient that for all practical purposes it is the equivalent of no performance at all." *Mikes v. Straus,* 274 F.3d 687, 703 (2d Cir. 2001), *abrogated on other grounds*, 136 S.Ct. 1989 (2016).[3] Specifically, I noted that her allegations about Allegheny Avenue and the York facilities were pleaded with insufficient particularity, lacking detail about staffing shortages and the reimbursement model, any allegation of serious harm to residents at the Allegheny Avenue facility, and any particularity as to the alleged abuses at the York facility.

Her amended complaint similarly falls short of alleging with the required particularity that services were not provided, or were so substandard as to be equivalent of no service at all.  Relator argues a recent settlement, involving SavaSeniorCare, demonstrates the validity of cases where claims were submitted "based on grossly substandard services," which included "failure to properly staff a skilled nursing facility, the provision of substandard medical care, and the

---

[2] As in her initial complaint, Relator also states that she is bringing an express legally false claim. She argues that "Defendants violated the False Claims Act by submitting legally false claims that expressly and impliedly certified that Defendants complied with federal, state, and local regulations when Defendants had not." Relator's Resp. to Def.'s Mot. Dismiss at 15, ECF 38.  Her discussion, however, is limited to a claim for an implied false certification. *Id.* at 20-24.  Because Taylor's amended pleadings do not offer details about the process of Defendant's certifications, I must again dismiss her express false certification claim, as well as her allegations that Comhar falsified records, in violation of 31 U.S.C. § 3729(a)(1)(B).

[3] Although the Third Circuit has not addressed the "worthless services" theory of liability under the statute, a panel of the Court observed in a non-precedential decision that case law in the area of worthless services addressed situations where "either services literally are not provided, or the service is so substandard as to be tantamount to no service at all." *In re Genesis Health Ventures, Inc.*, 112 Fed. Appx. 140, 143 (3d Cir. 2004).

provision of preventable medication errors." Am. Compl. ¶ 34; Relator's Resp. to Def.'s Mot. Dismiss at 16. Relator characterizes her complaint as alleging similar instances of grossly substandard care. But the allegations underlying the SavaSeniorCare settlement described in detail a wide-spread corporate scheme to understaff facilities and included comprehensive recitations of staffing policies and specific staff ratios. *See e. g. United States, et al. ex rel. Thornton, et al. v. SavaSeniorCare, Inc., et al.,* Civil Action No. 16-CV-0840 (E.D. Pa.), Am. Compl. ¶ 55-68, ECF 1. Moreover, there, allegations of serious harm to residents resulting from insufficient staff were pleaded, such as residents being deprived of liquids or feeding assistance, forced to use their beds as toilets, left in their own urine and feces for extended periods, and found on the floor due to lack of assistance. *See e.g. id.,* ¶ 47.

In contrast, the amended complaint here lacks such detail and fails to address or remedy the defects I noted in my original opinion. While Relator adds that the lack of staffing resulted in "non-existent services," Am. Compl. ¶ 54, she provides no additional factual allegations to support this conclusion. And while she notes that a failure to administer drugs at the Allegheny Avenue facility is "a serious violation of Defendant's duties to the residents," she provides no further information as to the regularity of the failure or any serious harm to residents resulting from it. *Id*. ¶ 52. Similarly, the amended complaint does not include any information related to the York Facility as to the frequency of the alleged abuse, the identities of the perpetrators and residents, the overall level of care provided to the residents, and whether Defendant sought Medicare and Medicaid reimbursement for services provided to the harmed residents. *See U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 307 (stating that under Rule 9(b), a relator must provide the "who, what, when, where, and how of the events at issue"). Relator has failed to provide additional information necessary to determine the value of Defendant's services and the extent to which Defendant

attempted to submit fraudulent claims to the government. *Id.* at 156. I will therefore grant Defendant's motion to dismiss as to these claims.

2. Implied Certification

The bulk of the additions to the amended complaint appear to relate to Ms. Taylor's implied certification theory. Her initial claim failed because, although she sufficiently identified examples of negligent conduct at Allegheny Avenue that would appear to violate program regulations, she failed to establish that the noncompliance was material. In the context of implied certification, noncompliance must be material, meaning that the government "would not have paid these claims, had it known of these violations." *Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 579 U.S. 176, 196 (2016). This standard is "demanding," as the False Claims Act is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id*. at 194.

In an attempt to establish that Defendant's noncompliance was material, Relator relies primarily on the SavaSeniorCare settlement to argue that "it is clear that the United States Government conditions payment of Medicare and Medicaid reimbursements on maintaining state and federal requirements." Am. Compl. ¶¶ 34, 35. Because the SavaSeniorCare complaints alleged, among other things, lack of adequate staffing, Relator avers that this shows that "lack of adequate staffing would be material ... [the government] would cease payments if it had known." *Id.* ¶¶ 55, 56. In addition, Relator further avers that materiality can be inferred because one of Defendant's employees allegedly covered up its violations of regulations by destroying a report indicating that a resident had been injured as a result of a patient-to-patient incident. *Id*. ¶¶ 66-68. Relator then pleads as a conclusion that this combination of facts demonstrates that "failure to comply with state and federal standards could result in loss of funding, as compliance with state and federal standards is a condition of payment for Medicare and Medicaid." *Id.* ¶ 68.
6

Nonetheless, the amended complaint's implied certification claim remains deficient. In assessing materiality, courts have been instructed to consider "evidence that the defendant knows that the Government consistently refuses to pay claims ... based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Escobar*, 579 U.S. at 194. The Relator's reliance on the SavaSeniorCare settlement to show materiality is not enough. As discussed above, the SavaSeniorCare allegations related to inadequate staffing, failure to follow medical protocols, and the resulting harm to residents were far more detailed, wide-spread, and serious than Relator's allegations here. In addition, these failings formed only some of the allegations levied against SavaSeniorCare. The United States' complaint in the SavaSeniorCare case also alleged that, "through corporate-wide policies and practices, Sava exerted significant pressure on its [facilities] to meet unrealistic financial goals, resulting in the provision of medically unreasonable, unnecessary or unskilled services to Medicare patients," as well as delaying discharge of patients to increase Medicare reimbursements. U.S. Dep't of Just., SavaSeniorCare Press Release (May 21, 2021), ECF 39, Ex. 1. [4] The complaint here involves no such systemic allegations of inflating reimbursements by fraudulent means or delaying discharge of residents.

Relator's argument that the alleged destruction of a report is enough to establish materiality also fails. The report in question detailed a single incident. It is not intuitively obvious that the motivation for its destruction was a fear that the government might refuse to pay claims, and no facts are pleaded to support that assumption. To establish materiality, some broader scheme to

---

[4] The Government chose to intervene in the SavaSeniorCare case and declined to intervene here. The Third Circuit recently stated that "intervention decisions are, at best, of minimal relevance," while simultaneously noting that in a prior case the Court had considered non-intervention as one among many government actions and inactions that undermined relator's materiality allegation. *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.,* 5 F.4th 315, 346 (3d Cir. 2021) (citing *U.S. ex rel. Petratos v. Genentech Inc.,* 855 F.3d 481, 490 (3d Cir. 2017).

deceive must be alleged, such as where a defendant systematically directed employees to create false time records to match invoices submitted for reimbursement. *United States ex rel. Menoher v. FPoliSolutions, LLC*, No. CV 19-855, 2021 WL 3513860, at *7 (W.D. Pa. Aug. 10, 2021).

Relator's remaining allegations are wholly conclusory without any other facts to support her position that these requirements are material to the Government's payment decision. I will therefore dismiss the complaint. *See United States v. Kindred Healthcare*, 469 F.Supp. 3d 431, 450 (E.D. Pa. 2020) (Dubois, J.) (stating that a "relator's references to boilerplate language conditioning payment under Medicare and Medicaid on compliance with all laws and regulations are not sufficient to satisfy the demanding standard established in *Escobar*").

C. **Dismissal Is with Prejudice**

Having previously granted leave to amend, I will dismiss Relator's claims with prejudice. My previous memorandum precisely delineated what must be pleaded to state viable claims. Ms. Taylor is represented by experienced counsel, yet the amended complaint adds little, and fails to remedy the deficiencies identified earlier. This raises an inference of futility and prejudice to the Defendant, a non-profit organization providing mental health services, in having to continue litigating a case where there appears to be no cause of action. *See Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 165–166 (3d Cir. 2004) (finding that where "plaintiffs [have chosen] at their peril not to heed the district court's guidance and avail themselves of an opportunity to rectify the deficiencies of the amended complaint ... justice does not require that leave to amend be given"); *Krantz v. Prudential Invs. Fund Mgmt. LLC,* 305 F.3d 140, 144 (3d Cir. 2002) ("[the] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (noting that leave to amend is ordinarily

granted when a complaint is dismissed on Rule 9(b) particularity grounds alone, but that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.")

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted, and Relator's claims will be dismissed with prejudice. An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge